1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3  CARMEN NIEVES,
4
5       Plaintiff,                    Civil No. 07-2089 (JAF)

6       v.

7  UNIVERSAL SOLAR PRODUCTS, INC.,
8
9       Defendant.

10                    **OPINION AND ORDER**

11       Plaintiff, Carmen Nieves, brings this diversity action against

12   Defendant, Universal Solar Products, Inc., seeking damages and

13   injunctive relief for sexual harassment, sex discrimination, and

14   retaliation in violation of Puerto Rico Law No. 17, of April 22,

15   1988, 29 L.P.R.A. § 155-155j ("Law 17"), and Law No. 69, of July 6,

16   1985, 29 L.P.R.A. § 1321-41 ("Law 69"). Docket No. 60. Defendant

17   moves for summary judgment. Docket No. 24. Plaintiff opposes, Docket

18   No. 26, Defendant replies, Docket No. 62, and Plaintiff surreplies,

19   Docket No. 64.

20                           **I.**

21               **Factual and Procedural Synopsis**

22       We derive the following factual summary from the parties'

23   motions, statements of material facts, and exhibits. Docket Nos. 24,

24   26, 27, 65, 68, 73.

1    From March 16 to May 11, 2005, Plaintiff sold Defendant's solar

2    energy products door-to-door and at Defendant's booths in various

3    malls in Puerto Rico. Prior to working as a salesperson for

4    Defendant, Plaintiff worked in sales for other companies selling

5    solar water heaters, liquid chemicals, and cemetery lots.

6    Christopher Alers, a supervisor with Defendant, recruited Plaintiff

7    to come work for Defendant.

8    Plaintiff filled out a job application to work for Defendant on

9    March 16, 2005. Docket No. 65-2. On the same day, she also signed a

10   sales contract for sale of Defendant's products. Id. The contract

11   stated that "the existent relationship . . . is chiefly that of an

12   independent contractor" and that "the sales representative shall not

13   be considered an employee or agent of [Defendant]." Id. It provided

14   that either party could terminate the sales contract with thirty

15   days' notice. Id. It further stated that the sales person would be

16   responsible for paying booth expenses. Id. However, Plaintiff

17   maintains that Defendant provided an assigned booth at booth malls,

18   and that she was not responsible for expenses for the booth.

19   Under the agreement, Defendant paid Plaintiff solely on

20   commission, so if Plaintiff did not make any sales, she received

21   nothing from Defendant. Defendant's materials suggest that for the

22   first fourteen sales that a new associate made, she would receive an

23   18% commission. Docket No. 65-3. As the associate made more sales,

1    her commission would increase. Id. After an associate made a certain

2    number of sales, she would have the opportunity to recruit new

3    associates and earn commissions off of their sales.  Id.

4         Defendant's associates' handbook defines the different types of

5    sales associates, including a category described as independent

6    contractors. Docket No. 73-2. The handbook states that all associates

7    are required to work either 8:00 a.m. to 5:00 p.m. or 9:00 a.m. to

8    6:00 p.m., five days a week, with a one-hour lunch break. Id. The

9    handbook also indicates that Defendant keeps track of the absences

10   and late arrivals of associates, which are taken into consideration

11   in performance evaluations.  Id.

12        Immediately after Plaintiff filled out the sales contract, Alers

13   instructed her to go to Plaza Las Américas, a mall in Hato Rey,

14   Puerto Rico, so he could train her in how to work the booth there.

15   Plaintiff worked five or six hours that day. For the next eight

16   weeks, Plaintiff worked more than ten hours a day, seven days a week.

17   She never requested or received overtime payments for this work.

18   Plaintiff was almost always working with Alers and one or two other

19   associates. Alers was responsible for establishing the work schedules

20   at the malls, and training Plaintiff and several other sales

21   associates.

22        Plaintiff alleges that, from her first full day of work, Alers

23   made unwelcome sexual advances toward her.  He attempted to kiss her,

Civil No. 07-2089 (JAF)                                         -4-

1    touched her leg, called her his "sweet black babe," told her she was

2    hot, and stared at her buttocks and breasts. Plaintiff states that at

3    some point, she spoke with Alers' supervisor about this behavior.

4    Shortly thereafter, on May 11, 2005, Alers fired Plaintiff, with the

5    stated reason that she had refused to pick up a check from a client.

6    However, Plaintiff maintains that she was fired for refusing Alers'

7    sexual advances and/or that Alers made her work environment so

8    unpleasant that she was forced to quit.

9        Plaintiff filed a complaint before the Anti-Discrimination Unit

10   of the Department of Labor of Puerto Rico ("ADU"), the administrative

11   agency in Puerto Rico that reviews employment discrimination charges,

12   and the federal Equal Employment Opportunity Commission ("EEOC"). On

13   September 6, 2006, at Plaintiff's request, the ADU issued a letter

14   informing Plaintiff that she had the right to sue Defendant. The ADU

15   forwarded Plaintiff's request to the EEOC. On November 20, 2006, the

16   EEOC issued a letter informing Plaintiff that she had the right to

17   sue Defendant within ninety days of receipt of the letter.

18       On November 16, 2007, Plaintiff filed the present diversity

19   complaint in federal district court. Docket No. 1. Defendant moved

20   for summary judgment on August 25, 2008, asserting that (1) Plaintiff

21   was an independent contractor and, therefore, not covered by Puerto

22   Rico anti-discrimination laws, and (2) Defendant did not discriminate

23   against Plaintiff. Docket No. 24. Plaintiff opposed on September 9,

Civil No. 07-2089 (JAF)                                                        -5-

1    2008, <u>Docket Nos. 26, 27</u>, Defendant replied on September 26, 2008,

2    <u>Docket No. 62</u>, and Plaintiff surreplied on September 30, 2008, <u>Docket</u>

3    <u>No. 64</u>.  Plaintiff filed an amended complaint on September 29, 2008.

4    <u>Docket No. 60</u>.

5                                    **II.**

6              **<u>Summary Judgment Standard under Rule 56(c)</u>**

7              We grant a motion for summary judgment "if the pleadings, the

8    discovery and disclosure materials on file, and any affidavits show

9    that there is no genuine issue as to any material fact and the movant

10   is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

11   A factual dispute is "genuine" if it could be resolved in favor of

12   either party, and "material" if it potentially affects the outcome of

13   the case. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st

14   Cir. 2004).  The moving party carries the burden of establishing that

15   there is no genuine issue as to any material fact; however, the

16   burden "may be discharged by showing that there is an absence of

17   evidence to support the nonmoving party's case." <u>Celotex Corp. v.</u>

18   <u>Catrett</u>, 477 U.S. 317, 325, 331 (1986). The burden has two

19   components: (1) an initial burden of production, which shifts to the

20   nonmoving party if satisfied by the moving party; and (2) an ultimate

21   burden of persuasion, which always remains on the moving party.  <u>Id.</u>

22   at 331.

Civil No. 07-2089 (JAF)                                                    -6-

1    In evaluating a motion for summary judgment, we must view the
2    record in the light most favorable to the non-moving party. <u>Adickes</u>
3    <u>v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). However, the non-
4    moving party "may not rely merely on allegations or denials in its
5    own pleading; rather, its response must . . . set out specific facts
6    showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

7                                   **III.**

8                                 **<u>Analysis</u>**

9    Plaintiff alleges that Alers, an employee of Defendant,
10   subjected her to a hostile work environment and fired her for failing
11   to submit to his sexual advances. <u>Docket No. 60</u>. Defendant argues
12   that we should grant summary judgment in its favor because
13   (1) Plaintiff was an independent contractor and not an employee of
14   Defendant, and (2) Plaintiff cannot establish that she was sexually
15   harassed. <u>Docket No. 24-1</u>. We address these arguments in turn.

16   **A.    <u>Independent Contractor Status</u>**

17   Defendant argues that Plaintiff was an independent contractor
18   and, thus, may not invoke the protection of Laws 17 and 69. <u>Docket</u>
19   <u>No. 24-1</u>. Plaintiff acknowledges that these anti-discrimination laws
20   do not extend to independent contractors, but asserts that she had a
21   covered employer-employee relationship with Defendant. <u>Docket No. 26</u>.
22   Law 17 prohibits sexual harassment in employment. 29 L.P.R.A.
23   § 155. Law 69 prohibits gender discrimination in employment. 29

L.P.R.A. § 1321. Law 17 states that a protected employee is "any person who works for an employer and receives compensation therefor, or any job applicant. For the purposes of [this provision], the term employee shall be interpreted in the broadest sense possible." § 155a. Law 69 does not contain the same term; however, "Law 17 and Law 69 are . . . to be interpreted in pari materia." Valentin-Almeyda v. Municipality of Carolina, 447 F.3d 85, 102 n.20 (1st Cir. 2006).

In determining whether a party is an employee or an independent contractor under Puerto Rico law, we look to several factors, including (1) the form of the employment contract; (2) whether the work was full or part time; (3) whether the contract provides for vacation time, sick leave, or a retirement program; (4) the extent and nature of control the putative employer has over the worker; (5) the form of payment; (6) the ownership status of any equipment; (7) whether the worker has an independent business that contracts with the putative employer; and (8) the right of both parties to terminate the relationship at any time. López v. Nutrimix Feed Co., Inc., 27 F. Supp. 2d 292, 298 (D.P.R. 1998) (citing Rivera v Hosp. Universitario, 762 F. Supp. 15, 17 (D.P.R. 1991)); Lugo v. Matthew Bender & Co., 579 F. Supp. 638, 641-42 (D.P.R. 1984) (citing, inter alia, Avon Products, Inc. v. Secretario del Trabajo, 106 P.R. Dec. 803 (1977); Nazario v. González, 101 P.R. Dec. 569 (1973)). The most

Civil No. 07-2089 (JAF)                                                    -8-

1    important factor is the control the employer has over the work

2    performed. López, 27 F. Supp. 2d at 298.

3         Here, the factors point in different directions. The contract

4    stated that Plaintiff was an independent contractor and did not

5    provide for vacation time, sick leave, or retirement, and provided

6    that Plaintiff was paid purely on commission. Docket No. 65-2. These

7    factors point to a finding that Plaintiff was an independent

8    contractor. See López, 27 F. Supp. 2d at 298; Lugo, 579 F. Supp. at

9    641-42. However, the parties could not terminate the relationship

10   without giving thirty days' notice, Plaintiff worked full time or

11   more than full time, and she did not have an independent business

12   that contracted with Defendant. See Docket No. 65-2. These factors

13   point to a finding that Plaintiff was an employee. See López, 27

14   F.Supp.2d at 298; Lugo, 579 F. Supp. at 641-42. The ownership status

15   of the equipment used is unclear. The contract states that sales

16   representatives are responsible for "paying the booth shifts [they

17   are] willing to cover," see Docket No. 65-2; however, Plaintiff

18   maintains that she did not have to pay to rent the booth space.

19        Finally, as to the amount of control Defendant had over

20   Plaintiff, the evidence is inconclusive. Defendant argues that

21   Plaintiff had complete control over her hours; however, Plaintiff

22   states that Alers assigned her to work at various booths, determined

23   her work schedule, and was always working with her. Defendant's

1     associate's handbook states that all associates are required to work
2     either 8:00 a.m. to 5:00 p.m. or 9:00 a.m. to 6:00 p.m., five days a
3     week, with a one-hour lunch break. See Docket No. 73-2. The handbook
4     also indicates that Defendant keeps track of the absences and late
5     arrivals of associates, which are taken into consideration in
6     performance evaluations. Id. Taken with Plaintiff's allegations about
7     the supervision by Alers, this manual indicates that Defendant had a
8     substantial amount of control over Plaintiff's day-to-day work.
9     However, the record does not establish to what extent Defendant
10    actually followed the protocol set forth in the manual.

11         We find that issues of fact remain as to the extent and nature
12    of the control Defendant had over Plaintiff and the ownership status
13    of Defendant's booths. Since the most important factor is the control
14    the Defendant had over the work performed, see López, 27 F. Supp. 2d
15    at 298, these factual issues could be material to our determination
16    of whether Plaintiff was an employee or an independent contractor.
17    Therefore, Defendant is not entitled to summary judgment on this
18    issue.[1]

_____

[1] To the extent that Defendant argues for summary judgment on the
grounds that Alers is himself an independent contractor, and not an
agent, of Defendant, we note that there is even less evidence in the
record about the terms and conditions of Alers' employment.

**B.   Sexual Harassment**

Defendant contends that we should grant summary judgment in its favor because Plaintiff cannot establish that she was sexually harassed under either a quid pro quo or hostile work environment theory.  Docket No. 24.

Law 17 defines sexual harassment in employment as "any type of undesired sexual approach, demand for sexual favors and other verbal or physical behavior of a sexual nature" when (1) submission to the conduct becomes a condition of employment; (2) submission to or rejection of the conduct becomes grounds for a decision regarding the person's job; or (3) the conduct unreasonably interferes with the persons's work, or creates an intimidating, offensive, or hostile work environment. 29 L.P.R.A. § 155b. The first two types constitute quid pro quo harassment, while the third is hostile environment harassment. Hernández Loring v. Universidad Metropolitana, 186 F.Supp.2d 81, 85-86 (D.P.R. 2002) ("Hernández II"). We note that "the substantive law of Puerto Rico on sexual harassment appears to be aligned . . . with Title VII law, and Title VII precedents are used freely in construing commonwealth law." Hernández Loring v. Universidad Metropolitana, 233 F.3d 49, 52 (1st Cir. 2000) ("Hernández I").

1        **1.   Quid Pro Quo**

2        Defendant argues that Plaintiff cannot establish quid pro quo

3   harassment because she admits that she was fired for failing to

4   complete an assigned task, not for refusing Defendant's sexual

5   advances. Docket No. 24-1.

6        In a quid pro quo case, an employer may be liable where a

7   supervisor punishes a subordinate for refusing to comply with sexual

8   demands. See Hernández I, 233 F.3d at 52. A plaintiff must show that

9   a tangible job benefit or privilege was conditioned on her submission

10  to unwelcome sexual advances. Hernández II, 186 F. Supp. 2d at 86.

11       Plaintiff asserts that, shortly after she complained about

12  Alers' behavior to a supervisor, Alers fired her for objecting to his

13  continued sexual advances. Docket No. 65-6. Defendant counters that

14  Plaintiff was fired for failing to pick up a check from one of her

15  clients. Docket No. 24-1. Defendant attempts to show that this charge

16  is undisputed using Plaintiff's own deposition testimony reciting the

17  reason that Alers gave for firing her. See Docket Nos. 24-1, 24-2,

18  65-6. In the deposition, Plaintiff stated that Alers told her she was

19  fired for failing to pick up a check. Docket No. 65-6. However, later

20  in the deposition, she insisted that Alers' explanation was

21  pretextual; in fact, she stated, "[Alers] had made sexual advances to

22  me, and . . . because I did not give in to his wishes, then he fired

23  me without justification." Id. Based on our reading of this

1    testimony, Plaintiff does not agree to Defendant's version of events.

2    Accordingly, there exists a triable issue of material fact as to why

3    Plaintiff was fired and, therefore, whether she suffered quid pro quo

4    sexual harassment.

5         **2.   Hostile Work Environment**

6         Defendant asserts that Plaintiff cannot establish that she was

7    subjected to a hostile work environment because her recollections of

8    the harassment lack specificity as to the details of the alleged

9    incidents and are in apparent conflict with other facts in the

10   record. Docket No. 24-1.

11        In a hostile work environment case, the plaintiff must allege

12   "more than a mere isolated incident of sexual harassment." Rivera v.

13   DHL Global Forwarding, 536 F. Supp. 2d 148, 154 (D.P.R. 2008) (citing

14   Puerto Rico cases). We consider the nature of the offensive conduct,

15   the frequency and intensity of the conduct, the context in which it

16   occurs, its duration, and the victim's own actions and circumstances.

17   Id. The summary judgment standard "polic[es] the baseline for hostile

18   environment claims." Billings v. Town of Grafton, 515 F.3d 39, 50

19   (1st Cir. 2008) (quoting Pomales v. Celulares Telefónica, Inc., 447

20   F.3d 79, 83 (1st Cir. 2006)) (internal quotation marks omitted).

21   However, whether a hostile work environment exists is generally to be

22   determined by the finder of fact.  Id. at 47 n.7, 50.

1       An  employer  can  be  held  liable  for  (1)  its  own  actions,

2    (2)  those  of  its  agents  or  supervisors,  or  (3)  the  actions  of

3    employees,  if  the  employer  knew  or  should  have  known  of  the  offensive

4    conduct.  Rivera,  536  F.  Supp.  2d  at  154.;  see  29  L.P.R.A.  § 155d.  A

5    plaintiff  can  establish  employer  liability  based  on  the  actions  of

6    non-supervisory  employees  by  showing  that  the  employer  directly  knew

7    of  the  conduct  or  that  it  had  constructive  knowledge  through  its

8    agents  or  supervisors.  Rivera,  536  F.  Supp.  2d  at  154.

9       Plaintiff  alleges  that,  from  her  first  full  day  of  work,  Alers

10   made  unwelcome  sexual  advances  toward  her.  He  attempted  to  kiss  her,

11   touched  her  leg,  called  her  his  "sweet  black  babe,"  told  her  she  was

12   hot,  and  stared  at  her  buttocks  and  breasts.  She  asserts  that  she  and

13   Alers  were  constantly  together  during  the  time  that  she  worked  for

14   Defendant.  As  Defendant  notes,  Plaintiff  is  vague  as  to  the  exact

15   dates  of  each  incident;  nonetheless,  she  maintains  that  the

16   harassment  was  ongoing  during  the  period  that  she  worked  for

17   Defendant.  These  alleged  remarks  and  comments,  if  true,  would  surely

18   suffice  to  establish  the  existence  of  a  hostile  work  environment.

19   See  Billings,  515  F.3d  at  48  (stating  that  "for  a  male  supervisor  to

20   stare  repeatedly  at  a  female  subordinate's  breasts  is  inappropriate

21   and  offensive,  not  merely  unprofessional,"  and  denying  summary

22   judgment  where  such  conduct  occurs  in  connection  with  other  offensive

23   actions).

Civil No. 07-2089 (JAF)                                              -14-

1      Defendant contends, however, that it has presented evidence that

2      undercuts Plaintiff's version of the facts. Docket No. 24-1.

3      Defendant asserts that Plaintiff and Alers made sales to people

4      residing in remote areas of Puerto Rico, indicating that Plaintiff

5      and Alers did not spend as much time together as Plaintiff claimed,

6      and demonstrating that certain instances of harassment could not have

7      occurred on the dates alleged. Id. For example, Defendant states that

8      Plaintiff testified to working in a booth at Plaza Las Américas on

9      the date of the first incident of sexual harassment, but that her

10     sales indicate that she made a sale on that date to a person residing

11     in Río Grande, Puerto Rico, while Alers made a sale on that same date

12     to a person residing in Dorado, Puerto Rico. Id. at ¶ 60. Defendant

13     cites several similar apparent discrepancies in the sales record to

14     argue that the alleged harassment could not have occurred. Id.

15     However, this circumstantial evidence does not negate Plaintiff's

16     version of the facts. Because Plaintiff and Alers often worked at

17     booths in malls, they could have made sales to people from all over

18     the island in a single day. Similarly, Plaintiff could have

19     accompanied Alers while he made sales, even though she did not record

20     any sales herself. Defendant's evidence does not foreclose the

21     possibility that Plaintiff and Alers spent a substantial amount of

22     time together, during which he had the opportunity to harass her.

Civil No. 07-2089 (JAF)                                                    -15-

1      We find that issues of material fact remain as to (1) whether

2   Alers made the harassing comments and gestures to Plaintiff;

3   (2) whether the alleged offensive conduct was severe or pervasive

4   enough to create a hostile work environment; and (3) whether Alers

5   was an agent or supervisor of Defendant for liability purposes or

6   whether Alers was a non-supervisory employee and Defendant had actual

7   or constructive knowledge of Alers' alleged conduct. Accordingly, we

8   deny Defendant's motion for summary judgment on the hostile work

9   environment claim.

10                                  **IV.**

11                              **<u>Conclusion</u>**

12      For the reasons stated herein, we **DENY** Defendant's motion for

13   summary judgment, <u>Docket No. 24</u>.

14      **IT IS SO ORDERED.**

15      San Juan, Puerto Rico, this 24th day of February, 2009.

16                                  s/José Antonio Fusté
17                                  JOSE ANTONIO FUSTE
18                                  Chief U.S. District Judge